Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George W. Lindberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 4540 | DATE | 4/24/2001 |
| CASE TITLE | Anna D. Wells vs. Unisource Worldwide, Inc. | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] The date for submitting the proposed final pretrial order is stricken. The trial date is stricken. Defendant's motion for summary judgment is granted. Enter memorandum and order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| SLB | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ANNA D. WELLS, | ) |
| Plaintiff, | ) 00 C 4540 |
| v. | ) |
| | ) Judge George W. Lindberg |
| UNISOURCE WORLDWIDE, INC., | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Anna D. Wells, has filed a three-count complaint against her former employer, Unisource Worldwide, Inc. She alleges that her discharge by Unisource and its failure to rehire her are based on her race, and thus constitute violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Civil Rights Act of 1866, 42 U.S.C. § 1981. Wells further alleges that Unisource retaliated against her for filing a discrimination charge with the Equal Employment Opportunity Commission (EEOC) and the Illinois Department of Human Rights. Defendant has moved for summary judgment on all counts. For the reasons set forth below, the court grants defendant's motion in its entirety.

I. **Statement of Facts**

Anna D. Wells is an African-American woman who worked for Unisource from June 1993 to April 2000. Unisource sells industrial supplies, including janitorial and cleaning products, and copier paper. Wells worked at defendant's facility in Itasca, Illinois. She was first employed as a data entry clerk; three months later, she was promoted to the position of cash applications clerk in defendant's credit department.

Sometime in early 1998, Walt Welsh, defendant's credit director for the Great Lakes Area, informed Wells that her cash applications position was being transferred to Jacksonville, Florida. In January and again in May 1998, plaintiff apparently applied for or at least inquired about a credit administrator position, which Unisource considered a promotion from a cash applications clerk position. Wells did not receive an offer for either of these positions. In September 1998, she filed a charge of discrimination with the EEOC, complaining that on two occasions defendant failed to promote her to a credit administrator position because of her race. Although defendant now characterizes the 1998 charge as "unmeritorious," and denies in its motion that plaintiff ever actually applied for these jobs, defendant settled the EEOC charge by agreeing to promote plaintiff to the next open position as a credit administrator and to pay her back pay. In March 1999, plaintiff was promoted to a credit administrator position. Unisource evaluated her performance in August 1999, using its five-point rating system, under which a "1" indicated that "improvement [is] needed"; a "3" indicated "expected level"; and a "5" indicated "excellent." On this evaluation, plaintiff received 14 ratings of "3," six "4" ratings, and no "1" or "2" ratings.

Unisource's credit department had a bifurcated structure: accounts were handled by different credit administrators, depending on whether the products being purchased were "fine paper" or "supply systems." The credit department was also segregated along state lines: the credit administrators who handled fine paper accounts for Wisconsin customers were located in facilities in Appleton and New Berlin, Wisconsin, while supply systems credit administrators who handled Wisconsin accounts worked at the Itasca facility. Plaintiff held a position as a supply systems credit administrator handling some Wisconsin and some Illinois accounts.

In early 2000, "upper management"[1] at Unisource decided to consolidate the supply systems and fine paper credit administrators for each customer at the same location. Defendant claims that sales personnel who needed to resolve credit issues for their Wisconsin customers found it easier and more efficient to deal with credit administrators face-to-face; such interaction with the supply systems credit administrators was impossible because of their Illinois location. Because the supply systems accounts serviced in Itasca that had the customer's fine paper accounts serviced in Wisconsin involved Wisconsin-based customers, defendant opted to move the supply systems portion of these accounts from Itasca to its Appleton and New Berlin, Wisconsin locations. Plaintiff's duties were transferred to Appleton, Wisconsin, and credit administrator Betsy Novinski's duties were transferred to New Berlin, Wisconsin. Plaintiff learned of the decision to terminate her Itasca position from Walt Welsh and Alice Gorman, director of human resources. Welsh asked plaintiff if she wished to transfer to Wisconsin; she declined.

In addition to her Wisconsin accounts, plaintiff also handled defendant's "University Park Accounts" (UPK accounts), which were located in University Park, Illinois. After her termination, the UPK accounts were spread out among the remaining employees in the Itasca facility's credit department.

The other Itasca-based, supply systems credit administrator who handled Wisconsin-based accounts, Betsy Novinski, was not terminated. Before her duties were transferred to Wisconsin, she applied for and was offered another position in the company, although it is

---

[1] According to James Christian, plaintiff's immediate supervisor, Welsh made the decision to transfer the accounts at issue to Wisconsin.

-3-

unclear if she remained a credit administrator. Eight additional credit administrators were retained at the Itasca facility; apparently two remained in the supply systems department. All of these employees were white and had less seniority within the company than plaintiff. After plaintiff's accounts were transferred to Wisconsin, they were handled by a white employee.

Wells applied for another credit administrator position that became available in April 2000 when an employee in the fine paper division of the credit department left the company. Tom Freske, market area credit manager, decided to hire Ms. Lisa Jablinski, a white female from outside the company, instead of plaintiff. There is no indication that Freske was aware of plaintiff's 1998 charge of discrimination. In a September 1, 2000, memorandum to Gorman, Freske summarized his comparison of the qualifications of plaintiff and Jablinksi as follows:

> Under the experience required/desired category which specifies 3 to 5 years commercial credit experience, Ms. Wells has approximately 13 months experience in a credit and collection position where Ms. Jablenski [sic] has approximately 10 years experience. The financial responsibility aspect of the position requires the ability to handle an accounts receivable portfolio ranging in exposures from the high 4-figures to low six figures. Ms. Wells had experience with exposures in the low 4-figure to medium 5 figure range and Ms. Jablenski [sic] has been responsible for handling key accounts that had exposures in the low to medium 7-figures.
>
> Based on the above comparisons, Ms. Wells does not meet the qualifications of the position as does Ms. Jablenski [sic].

Wells contends that Jablinski did not have the requisite fine paper experience for this position, although the portions of the record she cites to support this contention do not discuss whether Jablinski actually had fine paper experience. Plaintiff had some experience in fine paper as she worked as a cash administrator in the fine paper division for three years.

Plaintiff alleges that Welsh had a "history" of discriminatory treatment of minority employees, which she believes motivated the decision to relocate her "cash applicator" job to Florida, her termination from the credit administrator position, and the denial of subsequent credit administrator positions that became available. In deposition testimony, Joann Turner, who had supervised plaintiff while she worked as a cash administrator, stated that she was "aware that there was a general consensus that Walt Welsh had a problem with color," which she based on "treatment of [herself] and others in the department."

After plaintiff was terminated, she sought work elsewhere. She filed the instant action after exhausting her administrative remedies.

## II. Discussion

The court must read the record in the light most favorable to the non-moving party. *Debs v. Northeastern Illinois Univ.*, 153 F.3d 390, 394 (7th Cir.1998). A genuine issue for trial exists only when a reasonable jury could find for the party opposing the motion, based on the record as a whole. *Pipitone v. United States*, 180 F.3d 859, 861 (7th Cir.1999) (quoting *Roger v. Yellow Freight Sys., Inc.*, 21 F.3d 146, 149 (7th Cir.1994)). That "general standard is applied with added rigor in employment discrimination cases, where intent is inevitably the central issue." *McCoy v. WGN Continental Broad. Co.*, 957 F.2d 368, 370-71 (7th Cir.1992); *Courtney v. Biosound*, 42 F.3d 414, 419 (7th Cir.1994). However, "the mere existence of some alleged factual dispute" will not defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The court therefore views the evidence in light of non-movant Wells' version of any disputed facts where that version is arguably supported by the record.

### A. The Discrimination Claim

#### 1. Transfer of the Credit Administrator Duties to Wisconsin

Plaintiff alleges in her complaint that defendant violated 42 U.S.C. § 2000e and 42 U.S.C. § 1981 because it took adverse employment action against her based on her race. Specifically, plaintiff complains that defendant terminated her from her position as a credit administrator based on her race, and that defendant refused to rehire her based on her race and instead hired a white woman from outside the company.[2]

Plaintiff must begin by establishing a prima facie case of discrimination. To do this, she must show that: (1) she was a member of a protected class; (2) she was qualified for her position; (3) she was discharged; and (4) other, similarly situated employees who were not members of the protected class were treated more favorably. *O'Regan v. Arbitration Forums, Inc.*, -- F.3d --, 2001 WL 357483, *3 (7th Cir. 2001). If plaintiff establishes a prima facie case, defendant must produce a legitimate, nondiscriminatory reason for her termination. In turn, plaintiff must rebut defendant's legitimate reason by presenting evidence that defendant's reason is a pretext for discrimination. "Pretext 'means a dishonest explanation, a lie rather than an oddity or an error.'" *Id.* (citations omitted).

---

[2] Although plaintiff alleged in her complaint that Unisource discriminated against her because of its denial to offer her various positions, including buyer, merchandiser, and contracts administrator, plaintiff claims in her response to defendant's instant motion that her lawsuit is aimed at the denial of the credit administrator position she held, and the one that subsequently became available and which was offered to Lisa Jablinski. Therefore, as to the failure to offer plaintiff the buyer, merchandiser or contracts administrator positions, defendant's motion for summary judgment is granted.

Unisource concedes that plaintiff can establish a prima facie case of discrimination regarding the decision to transfer her position from Illinois to Wisconsin.[3] Defendant maintains, however, that plaintiff cannot establish that its legitimate, non-discriminatory reason for transferring plaintiff's duties to another state is pretextual. It asserts that it made the decision to improve collections on its Wisconsin accounts by making it possible for sales personnel and credit administrators to interact on a face-to-face basis, and that plaintiff has offered no evidence to the contrary.

To rebut defendant's proffered reason for the employment decision, plaintiff must provide "evidence tending to prove that the employer's proffered reasons are factually baseless, were not the actual motivation for the discharge in question, or were insufficient to motivate the discharge." *Gordon v. United Airlines, Inc.*, -- F.3d --, 2001 WL 322168, *8 (7th Cir. 2001). Wells relies on the fact that less senior white credit administrators were not asked to relocate, that "the relocation scheme was historically used against her to terminate her employment," and that Welsh had a history of discriminating against minority employees.

Although it seems irregular that Unisource chose to terminate a more senior credit administrator instead of terminating a less senior credit administrator and reassigning work to the more senior employee, plaintiff has done absolutely nothing to establish that Unisource had such a seniority policy in place that it failed to use in this instance. As indicated above, establishing pretext requires a showing that the employer's justification is "a lie rather than an oddity."

---

[3] Considering the company also transferred the duties of a white employee to Wisconsin, the court is not so certain plaintiff would have been successful is establishing the fourth prong of the prima face case.

*O'Regan, supra.* Unisource maintains that it simply decided to terminate the employees whose accounts were transferred to Wisconsin. An additional problem with plaintiff's arguments is that Betsy Novinski, a white credit administrator who had more seniority as a credit administrator than plaintiff, also had her duties transferred to Wisconsin. Although plaintiff claims that Novinski was not terminated from her position, the record evidence shows that Novinski's credit administrator accounts were transferred to Wisconsin. Although Novinski applied for and received an offer for another open position within the company before the transfer occurred, her supply systems credit administrator position did end.

As to plaintiff's assertion that Welsh "was known to treat persons differently based on race," this is an unsubstantiated claim. There is no admissible evidence that Welsh's decisions, including the decision to transfer the Wisconsin accounts to the Wisconsin offices, were motivated by race. Because Wells has failed to meet her burden of establishing that the proffered reason for transferring her duties to Wisconsin was pretextual, the court grants defendant's motion for summary judgment on this claim.

## 2. Failure to Offer Plaintiff the Vacant Credit Administrator Position

Plaintiff's second claim of discrimination concerns Unisource's failure to hire her into another credit administrator position that opened before she left the company. With regard to this claim, defendant argues that plaintiff has failed to establish a prima facie case. Under the framework of *McDonnell Douglas*, a plaintiff has an initial burden of making out a prima facie case by proving all of the following: (1) that she belongs to a racial minority; (2) that she applied for and was qualified for a job for which the employer was seeking applications; (3) that despite her qualifications, she was rejected; and (4) that after her rejection, the position remained open

and the employer hired or continued to seek applicants of the same qualifications as plaintiff. *McDonnell Douglas*, 411 U.S. at 802.

Defendant argues that plaintiff cannot establish a prima facie case of race discrimination on this claim because she can offer no evidence regarding the qualifications of any other applicant who was considered for or offered this position. There is no dispute that Tom Freske, the market area credit manager, offered this position to Lisa Jablinski (although the parties offer no explanation for why Jablinski's resume is not part of the record). Unisource has, however, offered Freske's explanation for his decision to hire Jablinski instead of Wells, and plaintiff has not established that Freske's reason was pretextual. As Freske explained in his memo to Alice Gorman, the position required three to five years of experience; Jablinski had 10 years of experience contrasted with plaintiff's 13 months of experience. Jablinski also had experience with larger accounts, which the position required, while plaintiff did not. Wells attempts to create a factual issue by submitting that the position required fine paper experience, which she claims she had but Jablinski did not. This argument fails, as there is no mention in the position description of such a requirement. Nor has Wells established that her experience as a cash administrator in the fine paper department was applicable to the credit administrator position's responsibilities.

There is no evidence that Freske did not truly believe that Jablinski's level of experience made her more suitable for the position than plaintiff. For that reason, the court must grant defendant's motion for summary judgment on this claim as well..

2.  **Retaliation**

Plaintiff also complains that the decisions to transfer her duties to Wisconsin and to offer the credit administrator position to someone else were motivated by her charge of discrimination with the EEOC in September of 1998. To establish a prima facie case of retaliation, a plaintiff must prove that: (1) she participated in a protected activity; (2) she suffered an adverse employment action; and (3) there was a causal link between the protected activity and the employment action. *Payne v. Milwaukee County*, 146 F.3d 430, 433-43 (7th Cir.1998). To prove the causal link, plaintiff must prove that defendant would not have taken the adverse action "but for" her having filed the 1998 EEOC charge. *Johnson v. City of Fort Wayne*, 91 F.3d 922, 939-40 (7th Cir.1996).

Plaintiff's claim fails because, as with her discrimination claim, she has not rebutted the legitimate, nondiscriminatory reasons defendant has proffered for its actions. In addition, as defendant points out, the Seventh Circuit has indicated that a time delay of a year between the protected activity and the adverse action, without additional evidence, is insufficient to establish a causal connection. *Paluck v. Gooding Rubber Co.*, 221 F.3d 1003, 1009 (7th Cir. 2000). Here, plaintiff simply offers no evidence to support her retaliation claim. Nor is there any evidence that Freske, the manager who made the decision not to hire plaintiff into the credit administrator position, knew of her earlier charge of discrimination. For all of these reasons, plaintiff's claim of retaliation fails.

III. **Conclusion**

For the reasons stated above, the court grants Unisource's motion for summary judgment in its entirety.

**ORDERED:** The court grants defendant's motion for summary judgment.

**ENTER:**

_____
George W. Lindberg
United States District Judge

DATED: April 24, 2001